**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rene Ortiz, et al., | No. CV-26-01231-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Westlake Financial Services, et al., | |
| Defendants. | |

On January 9, 2026, Rene Ortiz and Maria del Socorro Ortiz ("Plaintiffs"), who are proceeding *pro se*, filed a complaint in Pinal County Superior Court. (Doc. 1-1 at 9-17.) The complaint names five defendants: (1) Emek Auto Sales ("Emek"); (2) Westlake Financial Services ("Westlake"); (3) Equifax Information Services LLC ("Equifax"); (4) Experian Information Solutions, Inc. ("Experian"); and (5) Trans Union LLC ("Trans Union"). (*Id.* at 10 ¶¶ 2-6.) The complaint alleges that Plaintiffs purchased a used vehicle from Emek in April 2023; that Westlake subsequently "purported to acquire the alleged obligation as a debt purchaser"; that Westlake subsequently "asserted the right to collect the alleged debt and furnished information concerning the account to Equifax, Experian, and Trans Union"; that Plaintiffs subsequently "disputed the tradeline with each CRA [credit reporting agency]"; and that each CRA "failed to conduct reasonable reinvestigations." (*Id.* at 11-12 ¶¶ 11-17.) Notably, the complaint identifies only one reason why the tradelines at issue were inaccurate—because, in Plaintiffs' view, it is unconstitutional for "debt buyers to collect and enforce consumer debts they merely

purchase and did not originate," such that Westlake "lack[ed] standing to collect, enforce, or assert creditor rights against Plaintiffs." (*Id.* at 12-14 ¶¶ 18, 36.) The complaint asserts three claims: (1) a claim for "lack of standing/unlawful debt collection" against Westlake; (2) a claim under 15 U.S.C. § 1681i of the Fair Credit Reporting Act ("FCRA") against Equifax, Experian, and Trans Union; and (3) a claim for "declaratory and injunctive relief" against all Defendants. (*Id.* at 14-16 ¶¶ 33-50.) The complaint was also accompanied by a purported "Certificate of Service" indicating that Plaintiffs mailed a copy of the summons and complaint to each Defendant. (*Id.* at 23-25.)

On February 20, 2026, Experian removed the action to this Court. (Doc. 1.) The notice of removal states that federal-question jurisdiction exists by virtue of the FCRA claim in Count Two, that all Defendants consent to removal, and that the removal notice is timely because Experian did not receive notice of the complaint until February 2, 2026. (*Id.*)

Soon after removal, Experian and Trans Union filed a Rule 12(b)(6) motion to dismiss. (Doc. 9.) Experian and Trans Union argue that Plaintiffs' FCRA claim against them fails because the complaint does not allege a factual inaccuracy in the disputed tradelines and instead seeks to raise a question over "the constitutionality of debt buying, which does not fall under the FCRA." (*Id.* at 4.) In the alternative, Experian and Trans Union argue the FCRA claim fails because Plaintiffs "fail to allege how the CRA Defendants' reinvestigation was insufficient." (*Id.* at 5-6.) Last, Experian and Trans Union argue that Plaintiffs' claim against them in Count Three fails because declaratory and injunctive relief are not available under the FCRA. (*Id.* at 6.)

Westlake also filed a motion to dismiss. (Doc. 12.) Westlake seeks dismissal both for lack of service under Rule 12(b)(5), because "Plaintiffs only mailed a copy of the Complaint and summons to Westlake's counsel," and for failure to state a claim under Rule 12(b)(6), because "[t]he entire basis of Plaintiffs' claims against Westlake is that it 'did not originate, fund, or extend consideration for the automobile transaction at issue'" but "a party does not need to establish that it is the originator of the debt to have standing to collect

it" in light of the "long-established principle that debts are assignable." (*Id.* at 1-2, 5.)

Plaintiffs filed a combined response to the motions to dismiss. (Doc. 19.) Plaintiffs do not attempt to defend the sufficiency of the complaint or seek to refute any of the dismissal arguments raised in the pending motions. Instead, Plaintiffs simply note their intention to file an amended complaint that "will address," in an unspecified way," the issues raised in Defendants' motions, including the identity of the proper parties, the factual allegations concerning the disputed tradelines, and the specific inaccuracies and reinvestigation failures at issue." (*Id.* at 2.) As for Westlake's service challenge, Plaintiffs do not dispute that they failed to properly serve Westlake but emphasize that they "are pro se and acted in good faith" by attempting to serve Westlake via mail and thus should be given "leave to cure any service deficiency." (*Id.* at 4.)[1]

Given this backdrop, resolution of the pending motions is straightforward. As for Westlake, the Court must begin with the Rule 12(b)(5) challenge. *See, e.g., King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) ("We must first consider the district court's ruling on Taylor's service defense, for without proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant. And in the absence of personal jurisdiction, a federal court is powerless to proceed to an adjudication.") (cleaned up); *Beecham v. JC Penney Distribution Ctr.*, 2019 WL 2924842, *3 (D. Kan. 2019) ("Because defendant Manpower has challenged jurisdiction under Rule 12(b)(5), the court must resolve this challenge before it may proceed to a merits adjudication under Rule 12(b)(6)."). It is undisputed that Plaintiffs failed to timely effect service on Westlake. However, this determination does not necessarily mean that Plaintiffs' claims against Westlake must be dismissed under Rule 12(b)(5)—instead, the Court has discretion to authorize additional time for service. *S.J. v. Issaquah School Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006) ("Even if service were insufficient . . . we

---

[1] Two days before they filed their response, Plaintiffs filed a motion for leave to file an amended complaint. (Doc. 18.) Because the motion did not include a copy of the proposed amended complaint, the Court denied the motion without prejudice. (Doc. 21.) The Court also encouraged the parties to meet and confer about Plaintiffs' intent to amend, because the filing of an amended pleading would moot the pending motions to dismiss. (*Id.*) However, it appears the parties were unable to reach an agreement.

could not simply affirm dismissal because the district court has discretion to dismiss an action or to quash service.  This discretion has yet to be exercised. . . . Rule 4(m) contemplates the possibility of an extension of time which, again, we believe is best left to the district court's discretion.") (citations omitted); *Stevens v. Security Pac. Nat. Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976) ("The choice between dismissal and quashing service of process is in the district court's discretion.").  Whether to authorize additional time for service, in turn, depends in part on whether such authorization would be futile—an issued addressed in the paragraphs below.  *Adams v. Columbus Lumber Co., LLC*, 2011 WL 1899805, *2 (S.D. Miss. 2011) ("[U]pon finding that service is insufficient but curable, a court generally should quash the service and give the plaintiff an opportunity to re-serve the defendant; however, dismissal without opportunity to cure is appropriate where proper service would be futile.") (cleaned up).

Turning to the merits, all three of Plaintiffs' claims are premised, one way or another, on the notion that it is impermissible for a debt buyer to seek to enforce a consumer debt it did not originate.  But the law is to the contrary.  *Sprint Comm's Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 271 (2008) ("The question before us is whether an assignee of a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit the proceeds of the litigation to the assignor.  Because history and precedent make clear that such an assignee has long been permitted to bring suit, we conclude that the assignee does have standing.").  Thus, Plaintiffs' "lack of standing" claim against Westlake in Count One is unavailing.  As for Count Two, dismissal is warranted due to Plaintiffs' failure to plead a cognizable inaccuracy and any facts plausibly suggesting that the CRAs' investigation was unreasonable.  *See, e.g., Humphrey v. Trans Union LLC*, 759 F. App'x 484, 488 (7th Cir. 2019) ("Because Humphrey's complaint did not allege a factual inaccuracy on his credit report, the district court correctly granted the CRAs' joint motion for judgment on the pleadings.  Humphrey's allegation that he was not required to make payments on his student loans required a legal determination about whether his disability-discharge applications required Navient to cease

collections."); *Wright v. Experian Info. Solutions, Inc.*, 805 F. 3d 1232, 1242 (10th Cir. 2015) ("A reasonable reinvestigation, however, does not require CRAs to resolve legal disputes about the validity of the underlying debts they report.").  Finally, the request for declaratory/injunctive relief in Count Three is subject to dismissal because (1) there is no valid underlying claim that might give rise to those remedies; and (2) at any rate, "[d]istrict courts in the Ninth Circuit consistently hold that a private party may not obtain injunctive relief under the FCRA." *Peterson v. Am. Express*, 2016 WL 1158881, *10 (D. Ariz. 2016).

Based on these determinations, Experian's and Trans Union's Rule 12(b)(6) motion to dismiss is granted in full.  Additionally, although Equifax filed an answer rather than moving to dismiss (Doc. 10), "[a] District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants." *Silverton v. Dep't of Treasury of U. S. of Am.*, 644 F.2d 1341, 1345 (9th Cir. 1981).  Such is the case here, as Plaintiffs do not factually differentiate between Experian, Trans Union, and Equifax for purposes of their claims against those Defendants in Counts Two and Three.

This leaves Plaintiffs' request for leave to amend in the event of dismissal.  The rule in the Ninth Circuit is that "[a] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (cleaned up). "[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), *as amended* (May 22, 1992).  For the reasons stated above, it is absolutely clear that Plaintiffs cannot state a valid "lack of standing" claim against Westlake in Count One or a valid claim for injunctive and declaratory relief against any Defendant in Count Three.[2]

---

[2]    The Court notes that Emek has never appeared in this action.  Additionally, the only purported proof of service that Plaintiffs filed as to Emek indicates that service was not properly effectuated, as Plaintiffs simply mailed the complaint and summons to Emek. (Doc. 1-1 at 23.)  Thus, the Court's previous statement (made in response to a confusing extension request filed by Plaintiffs) that "[a]ll Defendants have been served with process and are represented" (Doc. 26) was inaccurate as to Emek.  Nevertheless, to the extent

As a result, an extension of the service deadline as to Westlake would be futile, and Plaintiffs' claims against Westlake are therefore dismissed without prejudice pursuant to Rule 12(b)(5). *Jackson v. Warden, FCC Coleman-USP*, 259 F. App'x 181, 182-83 (11th Cir. 2007) ("Because Jackson failed to serve defendants properly, we find that this case should have been dismissed without prejudice. It was, therefore, improper for the district court to have reached the merits in this case and to have issued a dismissal with prejudice.").

In contrast, it may be possible for Plaintiffs to plead additional facts to cure the deficiencies identified above in relation to Count Two (by, for example, pleading some inaccuracy unrelated to the standing issue and pleading additional facts concerning the alleged inadequacy of the resulting investigation). Thus, Plaintiffs are granted limited leave to amend, but only as to Count Two and only as to Experian, Trans Union, and Equifax.

Accordingly,

**IT IS ORDERED** that:

1.    Experian's and Trans Union's motion to dismiss (Doc. 9) is **granted**.

2.    Westlake's motion to dismiss (Doc. 12) is **granted**.

3.    The complaint (Doc. 1-1 at 9-17) is **dismissed**.

4.    Westlake and Emek are **dismissed** as Defendants, without prejudice and without leave to amend.

5.    Plaintiffs may, within 14 days of the issuance of this order, file a First Amended Complaint. Plaintiffs may only reassert the FCRA claim in Count Two of the original complaint against Experian, Trans Union, and Equifax, and any changes shall be limited to attempting to cure the deficiencies identified in this order. Plaintiffs shall also, consistent with LRCiv 15.1, file, as an exhibit to the First Amended Complaint, a redlined

---

Plaintiffs' extension request sought an extension of time to serve Emek, that request is denied because an extension would be futile—Emek is only named as a Defendant in Count Three, and as discussed above, Count Three fails to state a claim and could not be cured by further amendment. Accordingly, Emek is dismissed without prejudice under Rule 4(m) for failure to timely effect service.

version indicating how it differs from the original complaint.

6. If Plaintiffs do not file a First Amended Complaint within 14 days of the issuance of this order, the Clerk shall enter judgment accordingly and terminate this action.

Dated this 5th day of May, 2026.

_____
Dominic W. Lanza
United States District Judge